# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Wilfred Carl Hudson,

               Petitioner,

v.

Steve Hammer, *Warden*,

               Respondent.

Case No. 16-cv-3017 (JRT/TNL)

**REPORT AND
RECOMMENDATION**

---

Wilfred Carl Hudson, OID No. 161392, MCF–Stillwater, 970 Pickett Street, Bayport, MN 55003-1490 (*pro se* Petitioner); and

Lori H. Conroy, Assistant Clay County Attorney, Clay County Attorney's Office, 807 North 11th Street, P.O. Box 280, Moorhead, MN 56561-0280 (for Respondent).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on a petition pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus, (ECF No. 1), and Respondent's motion to dismiss, (ECF No. 11). This action has been referred to the undersigned for a report and recommendation to the Honorable John R. Tunheim, Chief Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b). Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court recommends that the petition be dismissed.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

### A.  State District Court

Petitioner Wilfred Carl Hudson was married to S.F. and the two shared parenting responsibilities for Hudson's eight-year-old daughter, B.W. *State of Minnesota v.*

*Hudson*, No. A13–1338, 2015 WL 4393325, at *1 (Minn. Ct. App. July 20, 2015), *rev. denied* (Minn. Oct. 20, 2015). Hudson and S.F. separated approximately one year after they married, with B.W. living "with S.F. during the week and with [Hudson] on weekends. B.W. also stayed with [Hudson] after school if S.F. had to work late." *Id.* at *1. In September 2012,

> B.W. told S.F. that [Hudson] "hurts [her] down there" and pointed to her vagina. S.F. testified that B.W. later told her that [Hudson] had put his mouth on her vagina. S.F. reported B.W.'s allegations to law enforcement officers, who subsequently conducted a forensic interview and sexual assault examination of B.W. She told the interviewing detective that [Hudson] had engaged in oral, vaginal, and anal intercourse with her on separate occasions.

*Id.* Hudson was charged in Clay County District Court on September 20, 2012, with eight counts of First Degree Criminal Sexual Conduct. *Id.*; (ECF No. 13, Ex. B, at 1). Count eight was dismissed before trial. *Hudson*, 2015 WL 4393325, at *1 n.1; (ECF No. 13, Ex. B, at 1).

Prior to trial, the State moved "for an order permitting B.W. to testify outside of [Hudson's] presence and via one-way, closed-circuit television." *Hudson*, 2015 WL 4393325, at *1. The district court granted the motion, finding that "B.W. would be traumatized if she was required to testify in [Hudson's] presence." *Id.* B.W. subsequently testified from a separate room with the prosecutor and Hudson's counsel, and was informed that Hudson was watching her testimony. *Id.* Hudson, the judge, and the jury observed B.W.'s testimony from a separate room. *Id.* Hudson also testified at trial. *Id.* The jury found Hudson guilty of the first three counts of first degree criminal sexual conduct and not guilty of the remaining four counts. *Id.*; (ECF No. 13, Ex. B, at 1). On

April 25, 2013, the district court "imposed concurrent, respective prison sentences of 172, 201, and 360 months for the three offenses." *Hudson*, 2015 WL 4393325, at *1; (ECF No. 13, Ex. B, at 2).

### B. Minnesota Court of Appeals and Postconviction Petition

Hudson sought appeal to the Minnesota Court of Appeals on July 24, 2013. (ECF No. 13, Ex. B, at 2). The appeal was stayed, however, so Hudson could seek postconviction relief in the district court. *Hudson*, 2015 WL 4393325, at *2.

For his postconviction petition, Hudson "alleged that he had located a witness, S.B., who could offer new testimony regarding S.F.'s bias." *Id.* At an evidentiary hearing, "S.B. testified that he had been in a relationship with S.F. while she was married to [Hudson], and that S.F. asked him and several other people to kill [Hudson] so that she could obtain an insurance settlement that she believed that [Hudson] was entitled to receive." *Id.* S.B. also "stated that S.F. believed that obtaining custody of B.W. would assist her in obtaining the insurance settlement." *Id.* The district court found S.B.'s testimony not credible and denied the petition for postconviction relief. *Id.*; (ECF No. 13, Ex. E).

Hudson returned to his appeal, raising four grounds for relief. First, Hudson argued that the district court "erred by permitting B.W. to testify outside of his presence via one-way, closed-circuit television." *Hudson*, 2015 WL 4393325, at *2. Hudson contended that MINN. STAT. § 595.02, SUBD. 4(c), which permits a child witness who is a victim in a criminal sexual conduct case to testify outside the presence of the defendant if certain conditions are met, violated his confrontation rights under the Sixth Amendment.

*Id.*; (ECF No. 13, Ex. B, at 2, 11–17). The Minnesota Court of Appeals, looking at *Maryland v. Craig*, 497 U.S. 838 (1990), and *Crawford v. Washington*, 541 U.S. 36 (2004), held that MINN. STAT. § 595.02, SUBD. 4(c) is constitutional and that the district court did not err by permitting B.W. to testify outside of Hudson's presence. *Hudson*, 2015 WL 4393325, at *2–*4.

Second, Hudson argued that the district court "erred by permitting the state to introduce testimony and out-of-court statements from an investigating detective who vouched for the credibility of B.W." *Id.* at *4; (ECF No. 13, Ex. B, at 2–3, 17–21). The Minnesota Court of Appeals noted that Hudson "did not object to the admission of the detective's statements and testimony at trial," resulting in plain error analysis upon appeal. *Hudson*, 2015 WL 4393325, at *4. The court found no error. *Id.* at *4–*5.

Third, Hudson argued the district court "erred by finding that the three offenses for which he was convicted did not arise out of the same behavioral incident." *Id.* at *6; (ECF No. 13, Ex. B, at 3, 21–26). The Court of Appeals noted the "jury found [Hudson] guilty of three counts of first-degree criminal sexual conduct. Count one alleged an incident of oral intercourse; count two alleged an incident of anal intercourse; and count three alleged an incident of vaginal intercourse." *Id.* At sentencing, the district court "found that the acts underlying the three counts for which [Hudson] was convicted arose out of different behavioral incidents because those acts occurred in different rooms and on different days." *Id.* The court found no error. *Id.*

Fourth, Hudson argued that the district court erred by denying his petition for postconviction relief. *Id.* at *7; (*see* ECF No. 13, Ex. D). Hudson argued that S.B's

testimony "constitutes newly discovered evidence that entitles him to a new trial." *Hudson*, 2015 WL 4393325, at *7. The Court of Appeals found that "the record reasonably supports the district court's credibility findings." *Id.*

After analyzing the four grounds for relief raised on appeal, the Minnesota Court of Appeals affirmed Hudson's convictions. *Id.* at *8.

### C.  Minnesota Supreme Court

Hudson then sought review by the Minnesota Supreme Court on August 18, 2015. Review was denied on October 20, 2015 and judgment was entered on November 16, 2015, thereby finalizing Hudson's convictions. (ECF No. 2-2, at 6–7). Hudson did not appeal to the United States Supreme Court. (ECF No. 2-2, at 6).

### D.  Federal Habeas Petition

On September 8, 2016, Hudson submitted the instant habeas petition. (Pet., ECF No. 1). Hudson asserts four grounds for relief in his habeas petition: (1) due process violation where the district court permitted Detective Robert Porter to impermissibly vouch for the credibility of B.W.; (2) due process violation in denying Hudson's postconviction petition asserting newly-discovered evidence; (3) due process violation where the district court impermissibly vouched for the credibility of B.W.; (4) and ineffective assistance of counsel. (Pet., at 5–11).

For the first ground for relief, Hudson raises factual questions that he asserts vitiate B.W.'s credibility. Hudson provides the following timeline: Hudson and B.W. moved to Minnesota from Virginia on July 3, 2008; B.W. attended school in Minneapolis from 2008 through December 2010; Hudson and B.W. moved to Madison, Wisconsin on

January 3, 2011; Hudson and B.W. moved to Moorhead, Minnesota on March 25, 2011, to live with S.F. and her sister, C.F.; Hudson, B.W., and S.F. move to another residence in Moorhead on June 3, 2011, where Hudson stays until his arrest in September 2012. (Pet., at 5). In order for B.W.'s allegations regarding abuse from first through third grade to be true, Hudson asserts, B.W. would have to have been living in Moorhead from September 2009 through September 2012, not Minneapolis or Madison. (Pet., at 5). In support, Hudson submitted Minnesota Predatory Offender Change of Information Forms, that show his address changes from Minneapolis, to Brooklyn Park, Minnesota, to Madison, and finally to Moorhead, Minnesota. (ECF No. 2). Hudson asserts this ground for relief was raised in direct appeal, but not via his postconviction petition. (Pet., at 6).

For the second ground for relief, Hudson asserts the district court erred in denying his postconviction petition where S.B. provided newly-discovered evidence of S.F.'s bias and motivation to influence B.W. to allege sexual abuse. (Pet., at 7). Hudson provides the following narrative:

> [S.B.] explained that [S.F.] manipulated B.W. and her relationship with Hudson. This included [S.F.] telling B.W. that she did not want B.W. around her dad anymore. [S.F.] told B.W. that her dad was too lenient and B.W. needed more discipline. [S.F.] also told B.W. that her dad did not "want her and that's why" [S.F] had her. This conversation happen[ed] before Hudson was arrested. [S.F.] told [S.B.] that she wanted the Habitat for Humanity home, and she got angry with Hudson when he told her she could not be a part of it . . . . [S.F.] also plan[ned] to take B.W. away from Hudson. [S.F.] said if she could keep B.W. away from Hudson for six months, she could establish guardianship. [S.F.] told [S.B.] her plan to kill Hudson and obtain the money Hudson was supposed to receive in a settlement.

(Pet., at 7). Hudson asserts this ground was raised in his postconviction petition and on direct appeal. (Pet., at 7).

For the third ground for relief, Hudson asserts the district court "impermissibly vouch[ed] for the credibility of B.W. by referring to her as credible, and by explaining her credibility to Hudson while under oath." (Pet., at 8). Hudson refers to Detective Porter's September 18, 2012 interview of B.W., in which B.W. says Hudson is her dad. (Pet., at 8). Hudson then refers to his trial in which the prosecutor asked B.W. who Hudson was, with B.W. denying Hudson is related to her three times. (Pet., at 8). Hudson asserts that the district court, in asking B.W. about the importance of telling the truth, vouched for B.W.'s credibility. (Pet., at 8). Hudson indicates this claim was not raised on direct appeal or in his postconviction petition. (Pet., at 9).

Finally, for the fourth ground for relief, Hudson asserts he was denied his Sixth Amendment rights due to ineffective assistance of counsel. (Pet., at 10). Hudson asserts his trial counsel's performance of cross-examination of state witnesses "was very poorly conducted." (Pet., at 10). Hudson claims the cross-examination questions were very confusing to Hudson and the district court, including an instance where, when cross-examining Detective Porter, the State indicated it did not understand the question, and another instance where his trial counsel said "And I got confused because I get confused quite often." (Pet., at 10). Hudson also asserts his trial counsel forgot Hudson's name at points. (Pet., at 10). Hudson indicates he did not raise this claim for relief on direct appeal or in his postconviction petition. (Pet., at 10). Hudson submitted a document from the Minnesota Office of Lawyers Professional Responsibility, indicating that, following

review of Hudson's submitted complaint and documents, it would not be investigating further his allegations of ineffective assistance of counsel concerning his trial attorney. (ECF No. 2-3).

Concerning grounds three and four, Hudson claims he requested that his appellate public defender raise these issues, but he was ignored. (Pet., at 12). Instead, Hudson asserts, his appellate public defender "filed petitions for the best of his interest[s] not Hudson['s]." (Pet., at 12). Related to this assertion, Hudson submitted correspondence with his appellate attorney, dating February 2014 through April 2016. (ECF No. 2-2, at 1–6). In a February 21, 2014 letter, Assistant State Public Defender Davi Axelson describes, inter alia, that his investigator had "made multiple attempts to contact [S.B.]," but those attempts were unsuccessful. (ECF No. 2-2, at 1). On July 20, 2015, Axelson wrote Hudson with an update as to the status of Hudson's appeal, including informing Hudson of his appeal rights to the Minnesota Supreme Court and the requirements for a federal habeas petition, including the need to exhaust state remedies. (ECF No. 2-2, at 2). On August 20, 2015, Axelson responded to a letter from Hudson, indicating that Axelson "will not be attempting to contact [C.F.]." (ECF No. 2-2, at 4). Axelson explained:

> First, any information she provided at this point would not qualify as newly discovered evidence because you were aware of her potential testimony at the time of your trial. Second, if we were going to raise an ineffective assistance of counsel claim against your attorney for not calling her as a witness, this claim had to be made during your first postconviction hearing. At this point, we have waived that issue by not raising it in the past. Thus, I will not be contacting her on your behalf.

(ECF No. 2-2, at 4). Axelson also indicated he would "not be contacting the Fargo Housing department or attempting to obtain a police report on [Hudson's] behalf"

because he "cannot submit additional information regarding [Hudson's] convictions at this point." (ECF No. 2-2, at 4).

Respondent moved to dismiss on the grounds that two of Hudson's claims were never raised, presented, or addressed by Minnesota state courts, rendering them procedurally barred, and that Hudson has not shown he is entitled to federal habeas relief on the two remaining claims. (ECF No. 11). Hudson submitted a response in opposition, focusing wholly on factual arguments. (ECF No. 22).

## II.    ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 governs a federal court's review of habeas corpus petitions filed by state prisoners. Section 2254 is used by state prisoners alleging they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may not grant habeas corpus relief to a state prisoner on any issue decided on the merits by a state court unless the proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or it "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state prisoner "must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see* 28 U.S.C. § 2254(b)(1). "To provide the State with the necessary

'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted). "To be fairly presented 'a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005) (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161–62 (8th Cir. 1999)). However, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Cox*, 398 F.3d at 1031 (quoting *Barrett*, 169 F.3d at 1161–62). Additionally, "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32.

If a habeas petition contains claims that have not been exhausted in the state courts, the reviewing court "must then determine whether the petitioner has complied with state procedural rules governing post-conviction proceedings, i.e., whether a state court would accord the petitioner a hearing on the merits." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (citing *Harris v. Reed*, 489 U.S. 255, 268–70 (1989) (O'Connor, J., concurring)). "A state prisoner procedurally defaults a claim when he violates a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court." *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004)

(citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Thus, "a state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards." *Clemons*, 381 F.3d at 750 (citing *Murray v. Carrier*, 477 U.S. 478, 493–96 (1986)).

For the federal court to enforce a state procedural bar, it must be clear that the state court would hold the claim procedurally barred. *Clemons*, 381 F.3d at 750. The relevant question then becomes "whether there is, under the law of [Minnesota], any presently available state procedure for the determination of the merits of th[ese] claim[s]." *Thomas v. Wyrick*, 622 F.2d 411, 413 (8th Cir. 1980). Minnesota law provides that once the petitioner has directly appealed his sentence "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976); *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). "Claims are considered 'known' [under the *Knaffla* rule] if they were available after trial and could have been raised on direct appeal." *Vann v. Smith*, Case No. 13-cv-893 (SRN/JSM), 2015 WL 520565, at *6 (D. Minn. Feb. 9, 2015) (citing *Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006)).

## A. Ground Three: The District Court's "Credibility Vouching"

As noted above, Hudson's third ground for relief asserts the district court "impermissibly vouch[ed] for the credibility of B.W. by referring to her as credible, and by explaining her credibility to Hudson while under oath." (Pet., at 8). Hudson refers to Detective Porter's September 18, 2012 interview of B.W., in which B.W. says Hudson is

her father. (Pet., at 8). Hudson then refers to his trial in which the prosecutor asked B.W. who Hudson was, with B.W. denying Hudson was related to her three times. (Pet., at 8). Hudson asserts the district court asked B.W. about the importance of telling the truth. (Pet., at 8). Hudson concedes that this claim was not raised on direct appeal or in his postconviction petition. (Pet., at 9). Essentially, as described in his responsive memorandum, (ECF No. 22, at 8–11), Hudson's argument can be distilled into this premise: the district court, in allowing B.W. to testify, confirmed that she understood the importance of telling the truth. In so doing, the district court somehow "vouched" that B.W.'s testimony would be credible. Hudson then provided citations to the trial transcript and police reports that he purports made B.W. an incredible witness.

Hudson failed to present his third claim to the state courts, either on direct appeal or in his postconviction petition. First, Hudson asserts this is a due process claim under the Fourteenth Amendment. No claim under the Fourteenth Amendment was made to the state courts. Second, no claim, even under state law, was made concerning the district court's decision to allow B.W. to testify. Instead, Hudson appears to be fusing his first and second arguments made to the Minnesota Court of Appeals: that the district court erred in permitting B.W. to testify out of Hudson's presence under a state statutory scheme and that the district court erred by admitting hearsay statements concerning Porter's interview of B.W. Even if Hudson's present claim is related to those two claims, the claim he now brings has morphed into something new altogether. Hudson has not given the state courts "an opportunity to act" on this particular claim. *O'Sullivan*, 526 U.S. at 842. It follows that Hudson did not "fairly present" a specific federal

constitutional right associated with this claim to the state courts. *Cox*, 398 F.3d at 1031 (quoting *Barrett*, 169 F.3d at 1161–62). Simply put, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Cox*, 398 F.3d at 1031 (quoting *Barrett*, 169 F.3d at 1161–62).

Now, the Court must decide whether this claim is procedurally barred. Under Minnesota law, all matters raised on direct appeal or claims known but not raised are procedurally barred on subsequent review. *Knaffla*, 243 N.W.2d at 741; *McCall*, 114 F.3d at 757. Hudson's claim rests on the trial testimony of B.W., the district court's decision to allow B.W. to testify, and police reports used in investigating the crimes for which Hudson was convicted. This information was known to Hudson at the time of his direct appeal, and there is nothing about the claim itself that prevented it from being brought previously. Under Minnesota's postconviction rules, Hudson would not be permitted to bring his current "credibility vouching" claim. Therefore, Hudson is procedurally barred from bringing the claim in his federal habeas petition.

### B. Ground Four: Ineffective Assistance of Counsel Claim

In his habeas petition, Hudson asserts he was denied his Sixth Amendment rights due to ineffective assistance of counsel. (Pet., at 10). Hudson asserts his trial counsel's cross-examination of state witnesses "was very poorly conducted." (Pet., at 10). Hudson claims the cross-examination questions were very confusing to Hudson and the district court, including an instance where, when cross-examining Detective Porter, the State indicated it did not understand the question, and another instance where his trial counsel said "And I got confused because I get confused quite often." (Pet., at 10). Hudson also

13

asserts his trial counsel forgot Hudson's name on occasion. (Pet., at 10). Hudson concedes that he did not raise this claim for relief on direct appeal or in his postconviction petition. (Pet., at 10).[1]

No claim concerning the alleged ineffective assistance of trial counsel was made to the Minnesota courts, either on direct appeal or in his postconviction petition. Thus, Hudson did not fairly present this claim to the state courts. By not presenting this claim to the state courts, the state courts were deprived of the opportunity to rule upon the alleged grounds for relief.

Now, the Court must decide whether this claim is procedurally barred. Under Minnesota law, all matters raised on direct appeal or claims known but not raised are procedurally barred on subsequent review. *Knaffla*, 243 N.W.2d at 741; *McCall*, 114 F.3d at 757. Hudson's claim rests on the acts of his trial counsel during trial. This information was all known to Hudson at the time of his direct appeal, and there is nothing about the claim itself—such as additional fact finding—that prevented it from being brought previously. Under Minnesota's postconviction rules, Hudson would not be permitted to bring his ineffective assistance of trial counsel claim. Therefore, Hudson is procedurally barred from bringing the claim in his federal habeas petition.

---

[1] In his responsive memorandum to Respondent's motion to dismiss, Hudson asserts that his appellate counsel was also ineffective. (ECF No. 22, at 11–13). It is not appropriate to raise new grounds for relief in a reply. This is addressed more fully below.

### C.  Grounds One and Two: Porter's "Credibility Vouching" and Hudson's Postconviciton Petition

For grounds one and two, Hudson asserts due process claims under the Fourteenth Amendment. Specifically, in ground one, Hudson alleges the district court permitted Porter to vouch impermissibly for the credibility of B.W. In support of this claim, Hudson provided facts that he asserts vitiates B.W.'s credibility. In ground two, Hudson asserts the district court erred in denying his postconviction petition where S.B. provided newly-discovered evidence.

Respondent does not dispute Hudson's assertion that he exhausted these two claims, arguing that grounds one and two should be denied on the merits. The Court disagrees with both Hudson and Respondent. Hudson ties grounds one and two to due process violations under the Fourteenth Amendment. But, no claims under the Fourteenth Amendment were made to the state courts.

As discussed above, a petitioner "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan*, 526 U.S. at 842; *see* 28 U.S.C. § 2254(b)(1). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to *the federal nature of the claim*." *Baldwin*, 541 U.S. at 29 (emphasis added). "To be fairly presented 'a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Cox*, 398 F.3d at 1031

(quoting *Barrett*, 169 F.3d at 1161–62). "Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Cox*, 398 F.3d at 1031 (quoting *Barrett*, 169 F.3d at 1161–62).

Here, Hudson failed to assert Fourteenth Amendment constitutional claims to the Minnesota state courts. Rather, his claims were entirely based upon state law. For ground one, Hudson relied entirely on Minnesota precedent concerning the impropriety of vouching for a witness's credibility. (ECF No. 13, Ex. B, at 2–3, 17–21). Likewise, the Minnesota Court of Appeals relied entirely on Minnesota precedent when deciding the argument.[2] The same is true for ground two. Hudson challenged that the information presented by S.B. constituted newly-discovered evidence that entitled him to a new trial. Again, the Minnesota Court of Appeals relied entirely on Minnesota precedent when deciding the argument, deferring to the credibility findings of the postconviction court. As such, Hudson failed to present federal claims concerning grounds one and two to the Minnesota state courts. It is not enough that Hudson's present claims are similar to his State claims. *Cox*, 398 F.3d at 1031 (quoting *Barrett*, 169 F.3d at 1161–62). By not presenting the *federal* basis for these claims to the state courts, the state courts were deprived of the opportunity to rule upon the alleged grounds for relief.

---

[2] Hudson does not challenge the *standard* the Minnesota Court of Appeals used in deciding his appeal—the plain error analysis—which has federal origins and approval, *see State of Minnesota v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (adopting approach outlined by *United States v. Olano*, 507 U.S. 725 (1993)), but rather challenges the facts leading to the result of that decision. The Court finds the distinction relevant. Hudson made no challenge to the standard in the Minnesota Court of Appeals and, as found throughout Hudson's habeas petition, he is merely challenging the facts underlying his convictions rather that the process of his conviction. In fact, Hudson has provided the Court no legal authority whatsoever in support of any of his claims throughout the entirety of his submissions to the Court. Instead, he has submitted nothing but factual claims and references to testimony or evidence.

Now, the Court must decide whether these claims are procedurally barred. Under Minnesota law, all matters raised on direct appeal or claims known but not raised are procedurally barred on subsequent review. *Knaffla*, 243 N.W.2d at 741; *McCall*, 114 F.3d at 757. Grounds one and two of Hudson's petition mirror two claims he brought before the Minnesota state courts. The only difference is that the federal ground for relief alleged here—the Due Process Clause of the Fourteenth Amendment—was not included. The alleged federal basis for Hudson's claims was known to Hudson at the time of his direct appeal and there is nothing about the claims themselves that prevented the federal basis from being included in Hudson's previous legal challenges to his convictions. Under Minnesota's postconviction rules, Hudson would not be permitted to bring his due process challenges to his claims concerning credibility vouching by Porter and his postconviction petition. Therefore, Hudson is procedurally barred from bringing these claims in his federal habeas petition.

### D. Miscarriage of Justice Considerations for Hudson's Procedurally Defaulted Claims

If a claim is procedurally defaulted, thereby barring review in a federal habeas corpus proceeding, the claim may still be considered if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Cause must be "something *external* to the petitioner, something that cannot fairly be attributed to him." *Id.* at 753 (emphasis in original).

17

Hudson asserts that his appellate public defender refused to raise grounds three and four on appeal even though he requested it. Even if Hudson's appellate counsel refused to raise grounds three and four on appeal, Hudson himself did not assert these claims in the Minnesota Court of Appeals or postconviction court. *See* MINN. R. CRIM. P. 28, SUBD. 5 (permitting *pro se* supplemental briefs in criminal appeals); *Case v. State*, 364 N.W.2d 797, 800 (Minn. 1985) ("In Minnesota the practice has developed informally whereby dissatisfied appellants are advised by counsel to state what their contentions are, and those contentions are then included in a supplemental brief."). Hudson has provided no argument that he was somehow barred from filing a supplemental brief concerning his claims that the district court vouched for B.W.'s credibility or that his trial counsel was ineffective.

Moreover, Hudson does not assert that his appellate public defender was ineffective in bringing Hudson's appeal or postconviction petition. Indeed, in Hudson's present habeas petition he only claims his trial counsel was ineffective.[3] In his responsive memorandum to Respondent's motion to dismiss, however, Hudson asserts that his appellate counsel, in addition to his trial counsel, was ineffective. (ECF No. 22, at 11–13). "[I]t is not appropriate to raise new grounds for relief in a reply." *Castillo-Alvarez v. Smith*, Case No. 14-cv-542 (JRT/JSM), 2015 WL 6445479, at *22 (D. Minn. Oct. 23, 2015) (citing *Scott v. Fondren*, Case No. 09-cv-762 (RHK/JJG), 2009 WL 3855926, at *3

---

[3] The Court notes that while Hudson indicates in his habeas petition that he did not raise grounds three and four previously because his appellate counsel did not raise them on appeal, he does not allege in his habeas petition that his appellate counsel was ineffective. The only ineffective assistance counsel claim he expressly makes is concerning cross-examination by his trial counsel.

(D. Minn. Nov. 17, 2009); *Christian v. Dingle*, Case No. 06-cv-3056 (ADM/JSM), 2008 WL 2467754, at *2–3 (D. Minn. June 16, 2008).

Even if the Court permitted Hudson to bring an ineffective assistance of counsel claim against his appellate counsel, Hudson makes no cause or prejudice showing that the procedural bar for grounds three and four are unjust. Rather, Hudson submitted letters from his appellate attorney showing the counsel's effectiveness. The letters show that Axelson was attempting to investigate Hudson's postconviction claims concerning S.B. and that he informed Hudson of his appellate and habeas rights. (ECF No. 2-2, at 1–2). Axelson also properly told Hudson that certain avenues of appeal were foreclosed, including information that would not qualify as newly discovered or that certain arguments were waived. (ECF No. 2-2, at 4).

Neither ground three nor ground four asserts that any newly-discovered facts brought his present claims to light. For ground three, Hudson is effectively challenging the jury's credibility determination and the factual records. For ground four, Hudson disagrees with the actions of his trial counsel and, if the Court were to include appellate counsel in this claim, he disagrees with his appellate counsel's strategy on appeal. There is nothing in the record and no credible argument put forth by Hudson that point this Court to conclude that Hudson had cause for not raising these claims previously. Nor can the Court discern any prejudice resulting from the procedural default of grounds three and four. Accordingly, the Court concludes there would not be a fundamental miscarriage of justice in the application of Minnesota's procedural default bar to grounds three and four of Hudson's petition. *See Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) ("Here,

Murphy has shown neither cause and prejudice for the default, nor that a failure to consider the claim would result in a fundamental miscarriage of justice. The basis for this claim was available to counsel, and 'the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default.'") (quoting *Murray v. Carrier*, 477 U.S. 478, 486 (1986)).

Turning to grounds one and two, Hudson cannot meet the cause or prejudice standard for these claims either. Hudson brought two similar claims to the Minnesota state courts, but failed to allege a federal basis for his claims. Because Hudson brought essentially the same claims but for alleging federal grounds, he cannot show cause for the default. Nor does the Court find prejudice. For grounds one and two, the Minnesota Court of Appeals relied on established standards of appellate review. *See Olano*, 507 U.S. at 732 (discussing the plain error standard); *Rice v. Collins*, 546 U.S. 333, 338–39 (2006) ("State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by "clear and convincing evidence."). There is nothing in the record or argument put forth by Hudson that suggests his conviction, as affirmed by the Minnesota Court of Appeals, "resulted in a decision that was contrary to, or involved an *unreasonable* application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an *unreasonable* determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (emphasis added). Therefore, the Court concludes there would not be a fundamental miscarriage of justice in the application of

Minnesota's procedural default bar to grounds one and two of Hudson's petition. *See Murphy*, 652 F.3d at 850 (quoting *Murray*, 477 U.S. at 486).

### E. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2254 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Federal district courts may not grant a certificate of appealability unless the prisoner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, the petitioner must show "that the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994). For purposes of appeal under 28 U.S.C. § 2253, the Court concludes that it is unlikely that reasonable jurists would find the question of whether Hudson is entitled to relief debatable, or that some other court would decide this petition differently. The Court therefore recommends that a certificate of appealability not issue.

## III.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Respondent's Motion to Dismiss Petition under U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody, (ECF No. 11), be **GRANTED**;

2.    Hudson's Motion to Grant Petition under U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody, (ECF No. 21), be **DENIED**;

3.     The Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, (ECF No. 1), be **DISMISSED WITH PREJUDICE**; and

4.     A certificate of appealability not issue.

Date: July 25, 2017                                    *s/ Tony N. Leung*
                                                       Tony N. Leung
                                                       United States Magistrate Judge
                                                       District of Minnesota

                                                       *Hudson v. Hammer*
                                                       Case No. 16-cv-3017 (JRT/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).